Argued July 23, affirmed August 27, reconsideration denied September 25, petition for review denied November 13, 1979

POTTERF,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND,
*Respondent.*

(WCB No. 77-7764, CA 13917)

598 P2d 1290

Steven C. Yates, Eugene, argued the cause for petitioner. With him on the brief was Malagon & Yates, Eugene.

Darrell E. Bewley, Associate Counsel of Attorneys for SAIF, Salem, argued the cause for respondent. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, SAIF, Salem.

Before Schwab, Chief Judge, and Thornton, Buttler and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

This is an appeal from an order of the Workers' Compensation Board, which modified a referee's award of permanent total disability to an award of 60 percent unscheduled disability.

Claimant, a 49-year old[1] woman, suffered a cervical injury in 1974, while employed as a nurse's aide. The claim was closed in late 1974 with an award of temporaty total disability only. A year later the claim was reopened as a result of continuing difficulties. In May, 1976, she had a cervical decompressive laminectomy and foraminotomy; in October, 1976, she had another cervical operation; and in March, 1977, she had a third operation. There is some indication in the record that the necessity for that course of surgery was doubtful, and there is little or no indication that it improved her condition. On the contrary, it may well have made it worse. She was declared medically stationary in late 1977; and the claim was again closed, this time with an award for unscheduled neck disability of 25 percent. At the time of the hearing she was being treated for pain and muscle spasms in her right shoulder and neck by her personal physician; between September, 1976, and the hearing she had been examined for diagnostic purposes several times by a neurologist.

Following the third surgery, claimant was referred to Vocational Rehabilitation, but she was informed by her counsellor in June, 1977, that her file was being closed because "you continue to be too disabled to become involved with Vocational Rehabilitation." She was also then informed that she was entitled to seek rehabilitation assistance in the future.[2] She has not

---

[1] In their briefs the parties refer to her as being 57 at the time of the hearing. She was born in 1930.

[2] The letter from the counselor said:

"As we discussed on the phone on 6-29-77, I will be closing your file with our agency at this time as you continue to be too disabled to become involved with Vocational Rehabilitation.

worked since her injury or looked for work since her first surgery. An attempt at secretarial training was not successful. She has only an eighth grade education, and she has no special job skills.

None of the medical evidence at the hearing supported a claim of permanent total disability. The claimant testified, complaining of stinging and burning in her right arm, difficulty in sleeping, chronic neck pain, headache and upper back pain. She felt she was precluded from lifting, performing housework, driving a car and nearly any other physical activity. She also was still having low back difficulties as a result of an automobile accident which occurred prior to her on-the-job injury.

Before the record was closed, claimant was again examined by the neurologist. He found "no abnormalities that would clearly make this patient functionally disabled from a neurological standpoint." Although his procedures indicated a long standing chronic cervical radiculopathy, he found no objective indications of pain and no disability or loss of function. The referee found claimant to be credible and accepted her testimony of pain, muscle spasms and inability to

"If you are dissatisfied with this decision to close your file, you may request a review of the decision. Contact me so that we can discuss and attempt to resolve any dissatisfactions you may have. If you remain dissatisfied, I will assist you in initiating a request for an administrative review with my supervisor.

"Should your situation change substantially in the future, feel free to make reapplication for services at that time."

The formal notification from the Disability Prevention Division said:

"Your Vocational Counselor has found you not eligible for rehabilitation services.

"Effective this date, the Disability Prevention Division is withdrawing the official referral which was made to Vocational Rehabilitation. Your Workmen's Compensation claim will be processed for closure when you are medically stationary.

"Please be advised that if, in the future, you feel you could benefit from the services of Vocational Rehabilitation, you should contact the Vocational Counselor in your area."

work. Those symptoms, plus the termination of vocational rehabilitation and her lack of education or training, led him to conclude that her "future earning capacity has been destroyed permanently."

On review the Board, which did not specifically reject or even question the referee's findings, said:

"The Board, on de novo review, finds that claimant has certainly received substantial medical and surgical care, perhaps more surgical care than was actually necessary. The medical evidence indicates that claimant is not so substantially disabled as to rule out the consideration of motivation as a factor in determining her disability. The evidence does not indicate any great effort on the part of claimant to attempt to return to the labor market; on the other hand, the evidence doesn't indicate that any of the agencies of this state which have the facilities to assist a worker in rehabilitation has done very much to assist this worker.

"It appears obvious to the Board that vocational rehabilitation from an educational standpoint would not be feasible for this claimant; however, it strongly urges claimant to avail herself of the services which can, and should, be provided by the Field Services Division of the Workers' Compensation Department. Everything possible should be done to aid this worker to return to some segment of the labor market by training her for a job which is within her physical and mental capabilities.

"The Board does not feel that claimant has met her burden of proving that she is permanently and totally disabled as a result of her industrial injury but they do find that she had lost a substantial amount of her wage earning capacity as a result of that injury. To adequately compensate claimant for that loss, the Board concludes that claimant should be awarded 192 degrees which represents 60% of the maximum allowable by statute for unscheduled disability."

On appeal, claimant characterizes the Board's order in this way:

"*** [I]t is clear from the Order on Review of the Workers' Compensation Board that the Board felt that the worker was permanently and totally disabled from any occupation which she had followed in the past. It is equally clear that the Board seems to be indicating that she was unable to perform any employment at the time but that she was retrainable. While abhoring the failure of various state agencies to successfully retrain this worker, the Board went on to punish her for the failure of the state agencies to retrain her."

She then suggests that the situation should be resolved in the manner of *Bivens v. Weyerhaeuser,* 6 Or App 100, 487 P2d 119 (1971).

In that case the referee had found the claimant to be permanently and totally disabled, but the Board found that it could not determine from the record whether his condition was stationary until he had had sufficient psychological and psychiatric consultation and treatment "directed toward the resolution of the psychiatric problems as they affect the possible return of this workman to some suitable employment." The Board therefore reinstated the claimant's temporary total disability and referred him back to the system for a redetermination. The trial judge agreed with that solution. This court, being unable to determine from the record what the proper result ought to be, simply deferred to the Board and affirmed the result.

Here, there does not seem to be any doubt that the claimant's condition is stable; the question is whether, looking at her physical and mental condition (including her motivation) in the light of her education and training, she is capable of "regularly performing work at a gainful and suitable occupation" which she "has the ability and the training or experience to perform, or *** which [she] is able to perform after rehabilitation." ORS 656.206(1)(a).

SAIF points out that under ORS 656.206(3):

"The worker has the burden of proving permanent total disability status and must establish that [she] is

[760]

willing to seek regular gainful employment and that [she] has made reasonable efforts to obtain such employment."

We can find nothing in this record that indicates any effort at employment. What we do find is that the claimant feels she hurts too much to work. The referee accepted that, but we do not.

■ Claimant's ultimate argument on this appeal depends upon the peculiar language of the Board's order, quoted above. Quoting from her brief:

"It appears to [claimant] that, as the Order on Review seems to indicate claimant's *vocational status* is not stationary, the claim should be reopened retroactive to the date it was last closed and the claimant provided with those rehabilitative services which the Board feels are necessary and which the Board apparently feels would be successful." (Emphasis supplied.)

Her position is that because she has no training for specific jobs and has only a limited education and does not know what type of work she can do, she is therefore unable to work and is permanently totally disabled. We have previously rejected that line of reasoning *(Briggs v. SAIF,* 36 Or App 709, 585 P2d 719 (1978)), and we reject it now.

■ We interpret the Board's language quoted as simply being an admonition to the claimant that there are available to her helping resources to which she can and should turn. Nothing in this record persuades us otherwise.

Affirmed.